UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARY E. RAYMOND,

                Plaintiff,

v.                                                        Case No. 5:06-cv-98
                                                          Hon. Gordon J. Quist
COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____/


**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of

a final decision of the Commissioner of the Social Security Administration (Commissioner) denying

her claim for supplemental security income (SSI).

        Plaintiff was born on April 6, 1958 and completed the 9th grade (AR 97, 126).[1]

Plaintiff alleges that she has been disabled since April 1, 2002 (AR 97).   On the date of her

administrative hearing, plaintiff amended her disability onset date to March 30, 1999 (AR 28-29,

188). She had previous employment as a cashier, factory line worker and maid (AR 121, 158-67).

Plaintiff identified her disabling conditions as: asthma; emphysema; arthritis; osteoporosis in the

spine; constant back pain; anxiety; high blood pressure; the inability to sit or stand "very long;"

shortness of breath; inability to "walk far," "move fast," or climb stairs; and anxiety attacks (AR

120).  After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed

plaintiff's claim *de novo* and entered a decision denying these claims on November 23, 2005 (AR

_____

[1] Citations to the administrative record will be referenced as (AR "page #").

16-24). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

2

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases.  *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health

and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). *See Brooks v. Sullivan*, No. 90-5947,

1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff

must show either that he was disabled when he applied for benefits . . . or that he became disabled

prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335,

416.330").

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. Following the five steps,

the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged

onset of disability (AR 23). Second, the ALJ found that she suffered from severe impairments of

chronic obstructive pulmonary disease (COPD) and arthritis of the back (AR 23). At the third step,

the ALJ found that plaintiff did not have an impairment or combination of impairments that met or

equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR

23).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity

(RFC):

> to perform work except for lifting and carrying more than 20 pounds occasionally and
> ten pounds frequently; climbing ladders, ramps, and scaffolds; climbing ramps and
> stairs more than occasionally; stooping and crouching more than occasionally; having
> any exposure to fumes, odors, dusts, gases, and poor ventilation; and having
> concentrated exposure to extreme cold.

(AR 23).   The ALJ found that plaintiff's RFC did not preclude her from performing her past relevant work as a cashier (AR 23). The ALJ further found that plaintiff's allegations regarding her limitations were not totally credible (AR 23).

Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 23-24).

## III.  ANALYSIS

Plaintiff raised two issues on appeal.

### A.     The ALJ failed to give proper weight to the opinions expressed by the treating physicians.

### 1.     Adelbert Stagg, M.D.

Plaintiff contends that the ALJ did not give proper weight to the opinions expressed by her family physician, Adelbert Stagg, M.D.  The court disagrees.

A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating the plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation.  *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

5

inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526.  Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

Dr. Stagg prepared pulmonary and mental RFC assessments in March 2004 indicating that plaintiff had significant limitations that effectively precluded full-time work (AR 268-73).  Dr. Stagg stated in the "Pulmonary Residual Functional Capacity Questionnaire" that plaintiff suffered from COPD, Gastroesophageal reflux disease (GERD), hypertension, depression and osteoarthritis (AR 21, 268).  Dr. Stagg stated that plaintiff has suffered from the following conditions since 1999: shortness of breath, episodic pneumonia, episodic acute asthma, episodic acute bronchitis, rhonchi, orthopnea, chest tightness, palpitations, coughing, edema, wheezing and fatigue (AR 266).

He identified the following precipitating factors for asthma attacks: upper respiratory infection, allergens, exercise, emotional upset/stress, irritants, cold air/change in weather, and foods (AR 268).  The doctor characterized the nature and severity of plaintiff's asthma attacks by stating "every activity is increasingly more difficult" (AR 268).  The doctor stated that plaintiff had an asthma attack "once a week," which incapacitated her for a minimum of six hours (AR 268).  The doctor stated that plaintiff did not have a nebulizer (AR 269).  Despite the apparent severity of plaintiff's asthma, the doctor reported that she has never been hospitalized for an asthma attack (AR 269).

The doctor felt that plaintiff's symptoms "often" interfered with her attention and concentration and that she was incapable of even "low stress" jobs (AR 269). Dr. Stagg observed that plaintiff "has not had any period of time that she has been healthy enough to sustain every day activity, let alon[e] work" (AR 269). The doctor listed several medications prescribed to plaintiff, including advil, prevacid, paxil, vicodin, albuterol and prednisone, but noted that she cannot afford all of the medication and was not getting the benefit from them (AR 269).

The doctor found that plaintiff could not walk a city block, could sit 15 minutes at a time, stand 20 minutes at a time, and could only sit, stand and walk less than 2 hours in an 8-hour workday (AR 270). He opined that plaintiff would have to take an unscheduled break every 30 minutes during the work day, with each break lasting 30 minutes (AR 270). He felt that plaintiff could "rarely" lift 10 pounds and never lift more than that amount (AR 270). Plaintiff could never twist, stoop, bend, crouch, climb ladders or climb stairs (AR 271). In addition, she must "avoid all exposure" to virtually every environmental restriction: extreme cold; extreme heat; high humidity; fumes, odors, dusts, gases; perfumes; solvents/cleaners; and chemicals (AR 271).[2]

The doctor indicated that plaintiff's impairments are likely to produce "good days" and "bad days," and that she would be absent from work "[a]bout 2 days per month" (AR 271). Finally, Dr. Stagg stated that plaintiff's deficits "have been in effect since 1993" and that her "ability to work at a regular job on a sustained basis" was also limited by lumbar pain and depression (AR 271).

---

[2] The court notes Dr. Stagg did not properly complete a portion of the questionnaire. Specifically, that while Dr. Stagg doctor indicated that plaintiff must "avoid all exposure" to the category of "other irritants or allergens," the doctor failed to enumerate these "other irritants or allergens" (AR 271).

Dr. Stagg also identified numerous mental impairments in a questionnaire entitled, "medical assessment of ability to do work related activities (mental)" (AR 272).[3]  Dr. Stagg indicated that plaintiff had "poor" ability to perform the following work tasks: follow work rules; relate to co-workers; deal with public; use judgment; interact with supervisors; deal with work stress; function independently; and maintain attention/concentration (AR 272).  The doctor stated that plaintiff has suffered from these deficits since 1993 (AR 272).

In addition, the doctor indicated that plaintiff has a poor ability to carry out even simple instructions, apparently due to limited intellectual ability, lack of education and lack of concentration due to depression (AR 273).  While plaintiff had a "fair" ability to maintain personal appearance, she had a "poor" ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability (AR 273).  The doctor stated that plaintiff had difficulty being compliant and maintaining her health due to depression and lack of insurance (AR 273).  The deficits  referenced in this paragraph have been in effect since 1999 (AR 273).  Dr. Stagg opined that plaintiff "is unable to work in any change of climate,  strenuous activity, stress, around chemcal [sic] because of [unintelligible] lung problems" (AR 273).   In summary, Dr. Stagg's opinion depicted plaintiff as an individual who was physically and mentally incapable of performing any work related task.

In June 2005, Dr. Stagg reported that plaintiff was "unable to return to work indefinitely" (AR 323, 326).

---

[3] The preprinted material on this questionnaire is of poor quality and some portions are illegible.  The court will address the legible portion of the questionnaire.

8

The ALJ "gave no significant weight" to Dr. Stagg's opinions regarding the physical restrictions because the doctor based his opinion on plaintiff's assertions, no medical evidence supported the "number and length of [asthma] attacks," and that plaintiff's impairments were not reasonably consistent with the symptoms and functional limitations reported (AR 21). Similarly, the ALJ "gave no significant weight" to Dr. Stagg's opinions regarding plaintiff's mental impairments, because he was not a psychologist or psychiatrist, his opinions were based upon plaintiff's allegations, and plaintiff had no significant mental health history and no evidence of current therapy, counseling or other mental health treatment (aside from medication) (AR 21).

The ALJ could properly discount Dr. Stagg's opinions. First, although Dr. Stagg was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work indefinitely. *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled" ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

Second, the medical evidence does not support Dr. Stagg's conclusion that plaintiff has suffered from these disabling conditions since 1993 or 1999. The earliest medical records appears to be a radiology report from February 2001 (AR 189). While Dr. Stagg is listed as plaintiff's primary physician, the administrative record does not contain any records from Dr. Stagg or his office prior to May 2002, some three years after plaintiff's alleged onset date of March 30,

9

1999 (AR 212).  This lack of medical evidence detracts from Dr. Stagg's statements that plaintiff
has suffered disabling conditions since 1993.  In addition, plaintiff's statement that she worked 40
hours per week as a cashier until February 1999 (AR 130) is inconsistent with Dr. Stagg's
conclusion that she has suffered from disabling symptoms since 1993 (AR 271-72).

        Third, the ALJ articulated good reasons for rejecting Dr. Stagg's opinions as
unsupported by the medical evidence.  The ALJ observed that a consultative examination
documented full functioning of plaintiff's hands; that plaintiff had received conservative treatment
for her arthritis; that plaintiff had a history of non-compliance (not taking even free samples of
prescribed medication, that plaintiff refused to undergo diagnostic tests, and continued to smoke
despite the allegedly disabling breathing problems); and that plaintiff has a history of missing
treatment appointments (AR 22, 208-12, 231-36, 289-96, 297-326).  In this regard, the ALJ observed
that plaintiff's failure to follow prescribed treatment detracts from her credibility (AR 22). *See
generally, Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (finding
that claimant's failure to lose weight and stop smoking was not consistent with the lifestyle of a
person suffering from intractable pain).[4]

        Fourth, the consultative physical examination did not reveal the extensive
impairments and deficits identified by Dr. Stagg.  The examining physician, Brandon Russell, D.O.,
found that plaintiff had a full range of motion of all joints checked and full dexterity in her hands
(AR 233).  Plaintiff had "mild difficulty" getting on and off the examination table, heel and toe
walking, squatting and hopping (AR 233).  She had evidence of asthma and emphysema with active

_____

[4] The court notes that a claimant's failure to follow prescribed treatment would constitute a separate
basis for denial of disability benefits.  *See* 20 C.F.R. § 404.1530(a) (in order to get benefits, the claimant must
follow the treatment prescribed by the claimant's physician).

wheezing (treated by Primatine mist), occasional chest pain, high blood pressure, and diffuse back pain (AR 235-36).   Dr. Russell noted that plaintiff had a normal gait and walked without an assistive device (AR 236).

Finally, the ALJ may also consider plaintiff's household and social activities in evaluating complaints of pain.  *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir 1990).  Here, the ALJ found that "[w]hile the medical evidence would suggest some limitation in daily activities, there is no evidence to suggest limitation to the extent alleged by the claimant" (AR 22).  The ALJ noted that plaintiff's daily activities included watching television, dressing and feeding herself, attending to personal care matters, making simple meals, washing dishes, sweeping the floor, walking outside, driving, going to the convenience store, and spending time with her children and grandchildren (AR 22, 141-48, 182-88).  Plaintiff stated that her activities were significantly limited by pain and breathing problems (AR 22, 141-48, 182-88).  A third party stated that plaintiff straightens the house, washes dishes, pays bills, handles bank accounts and visits with friends (AR 149-57).

While plaintiff's activities may be limited, these activities are not indicative of an invalid, incapable of performing sedentary types of work.  *See Pena v. Commissioner*, No. 98-1833, 1999 WL 775832 (6th Cir. Sept. 24, 1999) (claim of disabling pain belied by claimant's performance of daily activities such as preparing meals, grocery shopping, mowing lawn, taking out garbage and watching grandchildren); *Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 713 (6th Cir. 1988) (claimant found not disabled by severe pain when he was able to drive, do housework, visit relatives regularly, babysit occasionally, read, watch television, feed chickens and garden

11

occasionally);  *Gist v. Secretary of Health and Human Servs.*, 736 F.2d 352, 358 (6th Cir. 1984)

(capacity to perform daily activities on a regular basis will militate against a finding of disability).

    Accordingly, the court concludes that the ALJ could properly reject Dr. Stagg's

opinions regarding plaintiff's physical impairments as unsupported by substantial evidence.

    **2.**  **RFC evaluation of Glen Douglass, M.D.**

    The ALJ adopted the RFC evaluation prepared by a non-examining state agency

physician, Glen Douglass, M.D., who reviewed plaintiff's medical records, and found these

limitations consistent with the record as a whole (AR 20, 238-45).  Dr. Douglass concluded, among

other things, that plaintiff had the ability: to lift up to 20 pounds occasionally; to lift 10 pounds

frequently; to stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour

workday; never climb ladder/ropes/scaffolds; avoid concentrated exposure to extreme cold; avoid

all exposure to fumes, odors, dusts, gases, and poor ventilation (AR 238-45).  Based upon this RFC

assessment indicating that plaintiff could perform light work, and the vocational expert's testimony,

the ALJ concluded that plaintiff could perform her past relevant work as a cashier  (AR 22-23, 53-

54).

    Plaintiff contends that Dr. Douglass' RFC evaluation should be rejected, because the

doctor's opinion "is irrevocably tainted by his improper assessment of credibility."  Plaintiff's Brief

at 11.  Specifically, plaintiff points to Dr. Douglass statement that:

> The physical findings at the 10-16-03 CE [consultative examination] do not full [sic]
> support the degree of impairment alleged.  The claimant's statements are partially
> credible.

*Id.*  Plaintiff's contention is without merit.

It is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987) (per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).  An ALJ may rely on the opinions of the state agency physicians who reviewed plaintiff's file. *See* 20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (when treating physicians and consulting physicians provide conflicting opinions, an ALJ may decide to accept the consulting physician's assessment, as long as that opinion is supported by substantial evidence).

Plaintiff cites no authority for her proposition that a state agency physician is barred from commenting on a claimant's credibility with respect to the severity of an alleged impairment. On the contrary, SSR 96-7p explicitly directs the ALJ to consider the credibility determination of a non-examining state agency physician:

> Consideration of Findings by State Agency and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review

> Under 20 CFR 404.1527(f) and 416.927(f), administrative law judges and the Appeals Council are required to consider findings of fact by State agency medical and psychological consultants and other program physicians and psychologists about the existence and severity of an individual's impairment(s), including the existence and severity of any symptoms, as opinions of nonexamining physicians and psychologists. Administrative law judges and the Appeals Council are not bound by any State agency findings, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions. **Therefore, if the case record includes a finding by a State agency medical or psychological consultant or other program physician or psychologist on the credibility of the individual's statements about limitations or restrictions due to symptoms, the adjudicator at the administrative law judge or Appeals Council level of administrative review must consider and weigh this opinion of a nonexamining source under the applicable rules in 20**

**CFR 404.1527 and 416.927 and must explain the weight given to the opinion in the decision.** (See SSR 96-6p, "Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence.")

SSR 96-7p, 1996 WL 374186 at *8. *Cf. Taylor v. Secretary of Health and Human Services*, Nos. 86-5376 & 86-6023, 1987 WL 36493 at*4 (6th Cir. Feb. 27,1987) ("[s]ince none of the examining physicians rendered an express opinion as to the extent of claimant's pain, and the non-examining medical consultants did not give an opinion as to the degree of pain from their review of the records, the ALJ's were left to judge credibility for themselves").

> **B.      The ALJ failed to consider the combination of plaintiff's impairments when assessing her RFC.**

Next, plaintiff contends that the ALJ failed to include the mental impairment of an "anxiety disorder" in either the RFC determination or in the hypothetical questions posed to the vocational expert. Specifically, plaintiff contends that the ALJ did not address this issue raised in the consultative mental examination. I agree with plaintiff, and recommend the reversal and remand of the Commissioner's decision on this ground.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992).

The record reflects that consultative psychologist, Bruce D. Hackworth, Ph.D., examined plaintiff and found that she suffered from an anxiety disorder and had borderline

14

intellectual functioning (AR 227). Dr. Hackworth completed a psychiatric review technique form ("PRTF"), in which he concluded that plaintiff's mild functional limitations (including one or two episodes of decompensation) did not meet the requirements for the listed impairments of an organic mental disorder or anxiety related disorder (AR 256-57). The ALJ discounted the mental impairments, on the ground that "claimant's only difficulties functioning were transient in nature" (Exhibit 7F)" (AR 18-19).

It is unclear from the record as to how a claimant's functional limitations, some of which arise from an organic mental disorder of borderline intellectual functioning (as exhibited by IQ scores ranging from 74 to 78), could be summarily dismissed as "transient" (AR 18-19, 223-30). Dr. Hackworth determined that plaintiff's overall thinking and reasoning abilities only exceed approximately 4% of adults her age, and that she "may experience difficulty in keeping up with her peers in a wide variety of situations that require age-appropriate thinking and reasoning abilities" (AR 228). Dr. Hackworth further noted that "[r]elative to her peers, Mary exhibits less well developed abilities across all domains" (AR 229). While the ALJ cites Dr. Hackworth's report in support of her conclusions, the doctor's report does not characterize either the anxiety related disorder or the organic mental disorder as causing only "transient" functional limitations.

Under these circumstances, the court concludes that the ALJ's RFC, which failed to incorporate plaintiff's undisputed mental impairments in any fashion, is not supported by substantial evidence. Accordingly, the ALJ's decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should re-evaluate plaintiff's RFC with respect to the limitations caused by her organic mental disorder and anxiety related disorder.

15

IV.     **Recommendation**

I   respectfully   recommend   that   the   Commissioner's   decision   be   reversed   and
remanded pursuant to sentence four of 42 U.S.C. § 405(g), for a re-evaluation of plaintiff's RFC
with respect to the limitations caused by her organic mental disorder and anxiety related disorder
as reflected in Dr. Hackworth's report.


Dated:  June 14, 2007                              /s/ Hugh W. Brenneman, Jr.
                                                   Hugh W. Brenneman, Jr.
                                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk
of the Court within ten (10) days after service of the report.  All objections and responses to
objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections
within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474
U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).